## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TEKWAY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-6867 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| KRUTHIKA AGARWAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves a breach-of-contract claim by an in-state employer against an out-of-state employee. Plaintiff Tekway, Inc., an Illinois corporation based in the Chicago suburbs, hired Defendant Kruthika Agarwal, who lived in New Jersey. Soon after, Agarwal moved to Colorado and worked from home, without setting foot in Illinois. About a year into her contract, Agarwal allegedly violated a non-compete provision of her employment agreement. So Tekway sued her for breach of contract.

Agarwal moves to dismiss for lack of personal jurisdiction. For the reasons explained below, the motion to dismiss is denied.

### Background

The Court can consider facts outside the pleadings on a motion to dismiss for lack of personal jurisdiction. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). So the facts that follow come from the complaint, as well as the declarations and other materials submitted by the parties.

Tekway is an Illinois corporation based in Downers Grove, Illinois. *See* Cplt. ¶ 1 (Dckt. No. 1-1). Tekway essentially acts as a middleman for tech companies. It recruits personnel for IT jobs and then places those employees with clients for a set amount of time. *Id.* at ¶ 3. One of Tekway's major clients is AT&T. *Id.* at ¶ 4.

Tekway hired Agarwal in 2018. *See* Kumar Decl., at ¶ 2 (Dckt. No. 34, at 3 of 30). The parties disagree about who initiated the relationship. Each party claims that the other party made the first move and raised the idea.

According to Tekway, Agarwal "was referred to and initiated contact with Tekway." *Id.* at ¶ 6. Before she reached out, the company had never heard of Agarwal. *Id.* Agarwal asked Tekway to place her with one of its clients. *Id.* Tekway arranged for her to interview with AT&T, and after the interview, AT&T asked Tekway to bring Agarwal on board for a three-year term. *Id.* Tekway and Agarwal then negotiated an employment contract. *Id.* Agarwal was in New Jersey at the time, but she planned to move to Colorado and work remotely. *Id.*

Agarwal recalls things a little differently. As she remembers it, Tekway reached out to her, not the other way around. Tekway's Operations Manager, Pavan Kumar, contacted Agarwal and asked if she'd be interested in a job with the company. *See* Agarwal Decl., at ¶ 5 (Dckt. No. 11-1, at 3 of 7). She negotiated and signed the employment agreement in New Jersey. *Id.* at ¶ 6. She then sent the signed contract to Kumar (presumably in Illinois, but her declaration does not say). *Id.* at ¶ 7. A few weeks later, she moved to Colorado and began working for Tekway remotely. *Id.* at ¶ 3.

So the parties disagree about who reached out to whom. But the parties do agree on some of the facts. They agree that Agarwal negotiated the employment agreement from her home in New Jersey. *See* Kumar Decl., at ¶ 6 (Dckt. No. 34, at 4–5 of 30); Agarwal Decl., at ¶ 6 (Dckt.

2

No. 11-1, at 3 of 7).  They agree that she moved to Colorado, and worked from home.  *See*
Kumar Decl., at ¶¶ 6–7; Agarwal Decl., at ¶¶ 3, 8.  They agree that she never set foot in Illinois.
*See* Agarwal Decl., at ¶¶ 4, 9.  And they agree that Agarwal knew that Tekway was based in
Illinois.[1]  *See* Kumar Decl., at ¶¶ 6–7.

On June 10, 2018, Agarwal signed the employment agreement.  *See* Kumar Decl., at ¶ 6
(Dckt. No. 34, at 4–5 of 30); Employment Contract, at 4 (Dckt. No. 34, at 13 of 30); *see also*
Cplt. ¶ 6.  Several provisions referred to Illinois.  In fact, two references to Illinois appeared in
the first inch of the agreement.  The first sentence of the opening paragraph stated that Tekway is
"incorporated in Illinois" and is "located at [address], Downers Grove, IL."  *See* Employment
Contract, at 1 (Dckt. No. 34, at 10 of 30).

Other provisions cemented ties to Illinois.  The choice-of-law provision pointed to
Illinois:  "This Contract shall be construed under and governed by the laws of the State of
Illinois."  *Id.* at ¶ 13 (Dckt. No. 34, at 13 of 30).  The parties agreed to comply with Illinois law,
too:  "The parties agree that they shall comply with all laws, rules, regulations, ordinances, or
other requirements of the State of Illinois."  *Id.* at ¶ 7 (Dckt. No. 34, at 12 of 30).

A few provisions required potential performance in Illinois.  Agarwal agreed to work in
Illinois, at Tekway's request:  "Whenever 'Employer' so directs, 'Employee' agrees to work
either at the premise of 'Employer' or at the premise of a Client of the 'Employer.'"  *Id.* at ¶ 2(b)
(Dckt. No. 34, at 10 of 30).

---

[1]  Or, at the very least, none of the facts in this paragraph are contested by the other party, which means
that the Court can accept them as true.  *See GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018,
1020 n.1 (7th Cir. 2009); *Pumponator Inc. v. Water Sports, LLC*, 868 F. Supp. 2d 742, 747 (N.D. Ill.
2012).  For purposes of this motion, they're undisputed.

As another example, the contract required Agarwal to relinquish to Tekway any money received from clients. "Whenever 'Employee' receives any direct compensation from any Client of 'Employer' or any other entity for the services provided by 'Employee,' 'Employee' agrees to turn in all such monies to 'Employer.'" *Id.* at ¶ 2(f). Tekway was in Illinois. So, the contract required Agarwal to pay Tekway in Illinois if she received any money from clients. *Id.*; *see also* Kumar Decl., at ¶ 13 (Dckt. No. 34, at 7 of 30).

The contract contained other references to Illinois, too. The employment agreement contained a footer stating that it was an "Employment Contract" with a company based in "Downers Grove, IL." *See* Employment Contract (Dckt. No. 34, at 11–13 of 30). That footer appeared on three of the four pages. *Id.*

The employment agreement included a non-competition clause. Agarwal agreed not to "compete directly or indirectly with [Tekway] in the field of information technology consulting," and that obligation continued until "twelve months after the termination" of her employment. *Id.* at ¶ 2(k) (Dckt. No. 34, at 11 of 30); *see also* Cplt. ¶ 7.

Tekway ultimately placed Agarwal with AT&T through a contract with another placement company, Pinnacle. *See* Cplt. ¶ 6. Agarwal performed services for AT&T, but she remained an employee of Tekway. *See* Kumar Decl., at ¶¶ 1–2 (Dckt. No. 34, at 2–3 of 30).

In July 2018, a few weeks after signing the contract, Agarwal moved to Colorado. *See* Kumar Decl., at ¶ 7 (Dckt. No. 34, at 5 of 30); Agarwal Decl., at ¶ 3 (Dckt. No. 11-1, at 2 of 7). Agarwal worked remotely from Colorado for the rest of her tenure with Tekway. *See* Kumar Decl., at ¶ 7; Agarwal Decl., at ¶ 3.

The relationship began to unravel about a year later. In August 2019, Kumar discovered emails between other Tekway employees and Pinnacle, the other placement company. *See*

4

Kumar Decl., at ¶¶ 3, 8 (Dckt. No. 34, at 3, 5 of 30).  The emails allegedly revealed that the employees were violating their contracts with Tekway by negotiating employment agreements directly with Pinnacle.  *Id.* at ¶ 3.  So, they were cutting out Tekway as a middleman.

After terminating the other employees' contracts, Tekway sued them in Illinois state court.  *Id.* at ¶ 5.  Kumar claims that he called Agarwal multiple times to ask what her co-workers were up to, and whether Pinnacle had tried to interfere with her Tekway contract.  *Id.* at ¶ 8.  But she denied knowing anything about it.  *Id.*  According to Kumar, they also discussed the terms of Agarwal's contract and the lawsuits against the other employees.  *Id.*

On September 27, 2019, Pinnacle told Tekway that Agarwal's assignment with AT&T had ended three days earlier.  *See* Cplt. ¶ 11 (stating that Agarwal's "Purchase Order ('PO') 'end date' . . . was September 24, 2019"); Kumar Decl., at ¶ 9 (Dckt. No. 34, at 5 of 30).  That revelation caught Tekway by surprise.  Agarwal was scheduled to work for AT&T until the summer of 2021, more than a year and a half later.  *See* Cplt. ¶ 11.

Shortly after Pinnacle sent its termination email, Agarwal called Kumar and told him that AT&T had given her an ultimatum:  accept a full-time position with AT&T or find another job.  *Id.* at ¶ 12; *see also* Kumar Decl., at ¶ 9 (Dckt. No. 34, at 6 of 30).  Kumar reassured Agarwal that Tekway would find her another job and asked for her resume.  *See* Cplt. ¶ 12.  Agarwal provided her resume, and asked for 15 days off.  *Id.*  Kumar agreed.  *Id.*

But Agarwal wasn't really off work.  Kumar later found out that she was "secretly continuing to work for AT&T."  *Id.* at ¶ 13; *see also* Kumar Decl., at ¶ 10 (Dckt. No. 34, at 6–7 of 30).  Tekway believes that Agarwal arranged her work with AT&T through one of Tekway's subcontractor competitors, presumably Pinnacle.  *See* Cplt. ¶ 13; Kumar Decl., at ¶ 10 (Dckt. No. 34, at 6–7 of 30).

5

Tekway now claims that Agarwal breached her employment agreement by soliciting and accepting work from Tekway's clients (Pinnacle and AT&T), without going through Tekway's channels. *See* Cplt. ¶ 16. Tekway filed suit in the Circuit Court of DuPage County, and Agarwal later removed the case to federal court based on diversity jurisdiction. *See* Notice of Removal, at 1–2 (Dckt. No. 1).

## Legal Standard

Agarwal moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2).[2] The party asserting jurisdiction has the burden of proof. *See Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

When considering a motion to dismiss for lack of personal jurisdiction, the Court must "read the complaint liberally, in its entirety, and with every inference drawn in" plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation omitted). But unlike a motion to dismiss for failure to state a claim, a motion to dismiss for lack of personal jurisdiction is not limited to the complaint itself. The Court may consider affidavits and other competent evidence submitted by the parties. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

---

[2] Agarwal originally moved to dismiss for insufficient process and insufficient service of process under Fed. R. Civ. P. 12(b)(4) and (5), too. *See* Mot. to Dismiss (Dckt. No. 10). After a status hearing on January 8, 2020, the Court ordered Tekway to obtain a summons from the Clerk's Office and to promptly effectuate service of process. *See* 1/8/20 Minute Order (Dckt. No. 13). Tekway complied. *See* Dckt. No. 17. Agarwal subsequently dropped the Fed. R. Civ. P. 12(b)(4) and (5) components of her motion. *See* Def.'s Reply, at 1 n.1 (Dckt. No. 20).

When the Court resolves a motion to dismiss for lack of personal jurisdiction based on the briefs, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* at 782 (citation omitted); *see also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Rsch. Found.*, 338 F.3d at 782; *see also Curry Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). The tie goes to personal jurisdiction.

### Analysis

Agarwal argues that this Court lacks personal jurisdiction, and her motion recounts all the ways that she lacks ties to Illinois. She relies heavily on two central facts: she never lived here, and she never worked here. Agarwal has "never lived in Illinois," and has "never traveled to Illinois for work of any kind," including "work for plaintiff Tekway." *See* Agarwal Decl., at ¶ 4 (Dckt. No. 11-1, at 2 of 7).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Federal courts look to state law because their "authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

A federal court sitting in diversity can exercise jurisdiction over a defendant "only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction over defendants who engage in a number of specifically enumerated acts, including the "transaction of

7

any business within this State" and the "making or performance of any contract or promise substantially connected with this State." 735 ILCS 5/2-209(a)(1), (7).

The Illinois long-arm statute also contains a catch-all provision that authorizes courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). There is "no operative difference" between the federal and state Constitutions on the limits of personal jurisdiction. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The "Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause . . . so here the state statutory and federal constitutional inquiries merge." *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The two-part analysis collapses into one – if personal jurisdiction passes constitutional muster, it complies with Illinois law, too.

To satisfy the Due Process Clause, a defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1984).

Personal jurisdiction comes in two forms: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014). A court has general jurisdiction over a defendant only if he has continuous and systematic connections to the forum state. *Id.* at 127. General jurisdiction means that the defendant is so "at home" in the forum state that he can be sued there for anything, even

a claim that has no nexus to the state at all. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

General jurisdiction is off the table in this case. In the opening paragraph of its brief, Tekway proclaims that this Court has general jurisdiction over Agarwal. *See* Pl.'s Resp., at 1 (Dckt. No. 19). But the company abandons that position a few pages later: "Plaintiff concedes that general jurisdiction is not applicable in this case." *Id.* at 9. Tekway was right the second time. Agarwal is not from here, and nothing in the record suggests that she has anything close to continuous and systematic contacts with Illinois. *See Daimler AG,* 571 U.S. at 127.

That leaves specific jurisdiction. A court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC*, 623 F.3d at 444; *see also Daimler*, 571 U.S. at 127. Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (cleaned up). That is, the claim at issue must arise out of the defendant's ties to the forum state.

A defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. "Specific personal jurisdiction is appropriate where (1) the defendant has . . . purposefully availed himself of the privilege of conducting business in [the forum] state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* The Court's exercise of specific personal jurisdiction also must comply with "traditional notions of fair play and substantial justice" under the Due Process Clause. *Id.*; *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

The key is that the "defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284) (emphasis in original). What's more, the relationship between the defendant and the forum "must arise out of contacts that the defendant *himself* creates with the forum." *Id.* (quoting *Walden*, 571 U.S. at 277) (cleaned up). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

"Knowing about a potential for harm in a particular state is not the same as acting *in* that state – and it takes the latter to permit personal jurisdiction under state law." *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (emphasis in original). "It is not enough that a defendant know that any injury resulting from alleged tortious conduct would be felt in the forum state." *Green Light Nat'l, LLC v. Kent*, 2018 WL 4384298, at *3 (N.D. Ill. 2018); *see also Walden*, 571 U.S. 291 ("[T]he mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); *Advanced Tactical Ordnance Sys.*, 751 F.3d at 802. That is, "mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

In breach-of-contract cases, "[t]he specific jurisdiction inquiry is one of the totality of the circumstances." *See AS Engine Leasing, LLC v. Vision Airlines, Inc.*, 2014 WL 6461760, at *3 (N.D. Ill. 2014) (citing *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th

Cir. 2008)). A "contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp. Ltd.*, 536 F.3d at 761; *see also Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (finding that contacts "must be 'with the forum State itself, not . . . with persons who reside there'") (quoting *Walden*, 571 U.S. at 285).

The Court considers "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Grp. Ltd.*, 536 F.3d at 761 (quoting *Burger King*, 471 U.S. at 479); *see also Tower Commc'ns Expert, LLC v. TSC Constr., LLC*, 2018 WL 5624268, at *6 (N.D. Ill. 2018) (describing other factors courts should consider, including "who initiated the transaction; where the contract was negotiated; where the contract was formed; and where performance of the contract was to take place") (cleaned up). "The crucial question is whether [Agarwal] should have 'reasonably anticipate[d] being haled into court' in Illinois." *See Lukas Mktg. v. Prince George's Cmty. Coll.*, 2013 WL 5818592, at *4 (N.D. Ill. 2013) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)).

Agarwal points to all the ways that she lacks contacts with Illinois. Agarwal negotiated and signed the contract in New Jersey. *See* Agarwal Decl., at ¶¶ 6–7 (Dckt. No. 11-1). She then moved to Colorado and worked remotely. *Id.* at ¶¶ 3, 8. She has never lived in Illinois, and she never set foot in the prairie state as a Tekway employee. *Id.* at ¶¶ 4, 8–9, 11. And, she argues, any interactions she might have had with Illinois, such as salary payments or interoffice communications, were primarily facilitated by Tekway. *See* Def.'s Reply, at 5–6 (Dckt. No. 20).

11

Even so, the record contains enough ties to Illinois to support personal jurisdiction. For starters, there is evidence that Agarwal reached out to Tekway and raised the possibility of working for the company. Tekway points to testimony that Agarwal contacted the company about a job. *See* Kumar Decl., at ¶ 6 (Dckt. No. 34, at 4 of 30). True, Agarwal claims that Tekway, in fact, reached out to her (not the other way around). *See* Agarwal Decl., at ¶ 5 (Dckt. No. 11-1, at 3 of 7). But at this stage, the Court must resolve the factual dispute in Tekway's favor. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (stating that courts should "resolve any factual disputes in the affidavits in favor of the plaintiff"). Agarwal "purposefully 'reach[ed] out beyond'" New Jersey and formed ties with an Illinois company. *See Walden v.* 571 U.S. at 285. "[W]hen a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the Fourteenth Amendment." *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985).

Even if, for the sake of argument, Tekway had initiated the relationship, the record would still support a finding of purposeful availment. *See Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996) ("[T]he constitutionality of jurisdiction does not turn on which party 'started it.'"). Agarwal knowingly and voluntarily entered into an employment relationship with an Illinois corporation headquartered in Illinois. From day one, she reaped the benefits of working for a company based in the forum state. And by signing an open-ended contract with Tekway, Agarwal consented to an ongoing relationship, strengthening the ties to the forum. *See Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 284 (7th Cir. 1990); *Budget Rent a Car Corp. v. Crescent Ace Hardware*, 2003 WL 21673932, at *4 (N.D. Ill. 2003) (collecting cases finding an ongoing relationship between the parties significant in determining personal jurisdiction).

12

The contract also contains a number of provisions that point to Illinois, all of which should have planted the seed that litigating here was a possibility. The choice-of-law provision is a prominent example. A choice-of-law provision is not dispositive, but it is something that the Court can take into account when deciding where litigation is reasonably foreseeable. *See Perfect Brow Art, Inc. v. Ramzy*, 2018 WL 5994973, at *2 (N.D. Ill. 2018). The fact that the parties selected Illinois law "reinforce[s] [Agarwal's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation" here. *See Burger King*, 471 U.S. at 482; *see also WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 728 (N.D. Ill. 2014) (considering a choice-of-law provision as a relevant factor to personal jurisdiction); *Budget Rent A Car Corp. v. Crescent Ace Hardware*, 2003 WL 21673932, at *3 (N.D. Ill. 2003) (same).

There is a big difference between a choice-of-law provision and a choice-of-forum provision. The former picks the law, and the latter picks the place. Still, a choice-of-law provision can inform the reasonable expectations of the parties. The parties agreed that Illinois law would govern the contract. And the most common place to litigate Illinois law is Illinois.

Agarwal places too much weight on the fact that she never physically crossed the state boundaries. Personal jurisdiction does not require physical presence in the forum state. "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted." *Burger King*, 471 U.S. at 476. Personal jurisdiction "cannot be avoided simply because a defendant did not physically enter the forum state." *Felland*, 682 F.3d at 673; *see also Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283 (7th Cir. 1990) (finding that a relationship "naturally based on telephone

and mail contacts rather than physical presence . . . should not [allow a defendant to] avoid jurisdiction based on that distinction").

What's more, Agarwal and the company communicated "regularly" by phone, email, and messaging applications over the course of her fifteen months as a Tekway employee. *See* Kumar Decl., at ¶ 7 (Dckt. No. 34, at 5 of 30). Agarwal denies that the communications took place. *See* Def.'s Reply, at 4 (Dckt. No. 20). But Tekway submitted a supporting declaration stating that there were "dozens if not hundreds of emails and messages."[3] *See* Kumar Decl., at ¶ 7. Those regular communications support a finding of purposeful availment with the forum state.

Agarwal asserts that emails and phone calls are not dispositive in determining personal jurisdiction. While it's true that phone calls or emails between parties might not provide a basis for personal jurisdiction on their own, they do contribute to the larger mosaic of contacts with the forum state. *See Felland*, 682 F.3d at 679. Regular communication with an employer over the duration of employment may support a finding of personal jurisdiction over the defendant. *See, e.g.*, *Liqui-Box Corp. v. Scholle IPN Corp.*, 2020 WL 5593755, at *6 (N.D. Ill. 2020) ("[T]hat [the employee] communicated with [his supervisor] as part of his ordinary work duties establishes a connection between [the employee's] employment and the state of Illinois."); *W. Capra Consulting Grp., Inc. v. Snyder*, 2019 WL 3935045, at *6 (N.D. Ill. 2019) ("During his employment, Snyder communicated regularly with Illinois-based personnel . . . and he submitted timesheets and expense reports to W. Capra in Illinois."); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1052 (N.D. Ill. 2015) ("Emails and calls directed at the forum state can be meaningful enough to create personal jurisdiction."); *Abbott Lab'ys, Inc. v. BioValve Techs.*,

---

[3] Kumar's declaration (oddly) fails to say that Tekway received those messages in Illinois, but that important point is inferred. After all, there's no evidence that Tekway's management operated anywhere else.

*Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) ("Sustained contact over the course of several months, as existed between Abbott and BioValve, is 'not random, fortuitous, or attenuated.'") (citation omitted); *Vasilj v. Duzich*, 2008 WL 2062371, at *4 (N.D. Ill. 2008) ("Illinois courts have held that a defendant that initiates phone and mail communications in furtherance of a business agreement has sufficient minimum contacts, regardless of whether the defendant traveled to Illinois.") (citation omitted).

The non-competition clause also cemented long-term ties to a company based in Illinois. Although Agarwal performed services for AT&T, she signed a contract that created "continuing obligations" to Tekway. *See W. Capra Consulting*, 2019 WL 3935045, at *6; *see also Zep, Inc. v. First Aid Corp.*, 2010 WL 1195094, at *3 (N.D. Ill. 2010). Agarwal promised that she would refrain from competing with Tekway in the technology sphere until a year after the expiration of the contract. *See* Employment Contract, at ¶ 2(k) (Dckt. No. 34, at 11 of 30). Where the defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476 (internal citation omitted).

"None of these factors alone is necessarily sufficient for the court to exercise personal jurisdiction." *See AS Engine Leasing, LLC v. Vision Airlines, Inc.*, 2014 WL 6461760, at *3 (N.D. Ill. 2014). "[B]ut each is relevant and can support an exercise of jurisdiction." *Id.* (citing *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008)). On balance, Tekway has made a *prima facie* showing that Agarwal has enough minimum contacts with Illinois to support personal jurisdiction.

Tekway's alleged injury arises from Agarwal's forum-related activities, too. For specific jurisdiction, "the action must *directly arise* out of the specific contacts between the defendant

and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (citation omitted) (emphasis in original). Agarwal's contacts with Illinois "arise out of the employment agreement that lies at the heart of [Tekway's] claim." *See W. Capra Consulting*, 2019 WL 3935045, at *6; *see also WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 728 (N.D. Ill. 2014) (finding defendant's "refusal to perform the obligations of a contract it negotiated and entered with [plaintiff], an Illinois company, gives rise to the claim"). Agarwal entered into an employment relationship with an Illinois company, and the claims at issue arise out of that relationship.

Another court in this district addressed a similar situation in *A & R Logistical Holdings, Inc. v. Curl*, 2015 WL 5561179 (N.D. Ill. 2015). That case involved a claim that an out-of-state employee had breached a non-compete agreement, and the employee moved to dismiss for lack of personal jurisdiction.

The Court in *Curl* ultimately found enough ties to the forum state. The employee (Curl) was "well aware that he undertook [] responsibilities at the behest of a corporation headquartered in Illinois." *Id.* at *3. Part of his job included regular communications with the Illinois headquarters. *Id.* And even though Curl carried out his job responsibilities in another state, he "knew that his continued employment and agreement to the non-compete and nondisclosure clauses in the stock options agreement would have substantial effect in Illinois because [his employer's] operations headquarters [were] located there." *Id.* The fact that the employee signed the contract out of state, and largely worked out of state, did not immunize the employee from suit here. The employment "to a large degree was associated with Illinois." *Id.* And there was nothing unfair about litigating here. It did not offend notions of fairness and justice to "requir[e] an employee who, like Curl, had frequent and substantial contact with this out-of-state

employer to be subject to the jurisdiction of courts in his employer's home state." *Id.* The same analysis applies here.

Finally, exercising personal jurisdiction over Agarwal doesn't offend traditional notions of fair play and substantial justice. When a defendant "who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The Court considers the following factors listed in *Burger King*, including (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 292 (1980)).

Both parties fail to address whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. Probably for good reason. It does not seem outlandish or unfair for an employee to litigate an employment dispute in the employer's home state. At the very least, it does not seem so fundamentally unfair that it implicates the Due Process Clause.

True, Agarwal faces the burden of out-of-state litigation. But she hasn't suggested that her hardship is greater than what courts "routinely tolerate[]" in the exercise of specific jurisdiction over foreign parties. *See Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). And Tekway would face a similar burden by litigating in Colorado. *Id.* Illinois has "a strong interest in providing a forum for Illinois citizens alleging breach of non-compete agreements." *Budget Rent A Car Corp. v. Crescent Ace Hardware*, 2003 WL 21673932, at *5 (N.D. Ill. 2003).

Illinois courts also have an interest in adjudicating a contractual dispute governed by Illinois law. *Id.*

In sum, Tekway has met its burden to show that Agarwal has minimum contacts with the forum state, that the claim arises out of those contacts, and that exercising jurisdiction would not offend traditional notions of fair play and substantial justice.

### Conclusion

For the foregoing reasons, Defendant Agarwal's motion to dismiss for lack of personal jurisdiction is denied.

Date:   October 7, 2020

Steven C. Seeger
United States District Judge